Darold W. Killmer
Wyoming Bar N. 8-6643
Reid Allison*
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, CO  80202
PHONE (303) 571-1000; FAX (303) 571-1001
Email: dkillmer@kln-law.com; rallison@kln-law.com

*Motion for admission pro hac vice forthcoming.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| BRANDON WUEBKER, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| TOWN OF EVANSVILLE, WY; | ) | |
| SERGEANT LUKE NELSON; | ) | |
| MATTHEW MCGRAW; and | ) | |
| BRYCE NORCROSS, | ) | |
| in their individual capacities, | ) | |
| | ) | |
|     Defendants. | ) | |

_____

### COMPLAINT AND JURY DEMAND
_____

Plaintiff Brandon Wuebker, by and through his counsel, Darold W. Killmer and Reid

Allison of KILLMER, LANE & NEWMAN, LLP respectfully alleges for his Complaint and Jury

Demand as follows:

### I.    INTRODUCTION

1.    On the night of May 20, 2018, Brandon Wuebker was being driven home by a

friend. The driver of the car in which he was a backseat passenger was pulled over. Mr. Wuebker

1

had done nothing wrong and Defendant Evansville Police Officers Luke Nelson, Matthew McGraw, and Bryce Norcross had neither probable cause nor reasonable suspicion to believe he had committed any crime. Nevertheless, these officers beat, tased, and pepper sprayed him and slammed him headfirst into the road, and arrested him and took him to jail.  The charges were meritless, and eventually dismissed.

## II.    JURISDICTION AND VENUE

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331.  This action is authorized and instituted pursuant to 42 U.S.C. § 1983. Jurisdiction supporting Plaintiffs' claims for attorney's fees and costs is conveyed by 42 U.S.C. § 1988.

3.      The acts described herein were committed within the jurisdiction of the United States District Court for the District of Wyoming. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

4.      On or about December 11, 2019, Notices of Claims were sent to Defendants in compliance with the Wyoming Governmental Claims Act, including Wyo. Stat. § 1-39-113(c)-(d), and were in compliance with the signature certification requirements of Article 16, Section 7 of the Wyoming.

## III.    PARTIES

5.      At all times relevant to this Complaint, Brandon Wuebker was a citizen of the United States and was domiciled in the State of Wyoming.

6.      Defendant Town of Evansville, Wyoming is a governmental entity organized under the laws of the State of Wyoming and is a suable "person" pursuant to 42 U.S.C. § 1983.

7.      At all times relevant to this Complaint, Defendants Luke Nelson, Matthew McGraw, and Bryce Norcross were employed as law enforcement officers by the Town of Evansville Police Department ("EPD") and were acting in the course and scope of their employment and under the color of state law.  Defendant Nelson was a Sergeant in the Evansville Police Department and Defendants Norcross and McGraw were Patrol Officers.

## IV.      FACTUAL ALLEGATIONS

8.      On the night of May 20, 2018, Brandon Wuebker was the passenger in the backseat of a car. He was being driven home by a friend at the end of the night.

9.      Defendant EPD Officer Bryce Norcross pulled the driver over, after Norcross claimed the driver failed to come to a complete stop at a stop sign.

10.      Defendant Norcross spoke with the driver, the front-seat passenger, and Mr. Wuebker and obtained identification from each of them.

11.      None of the occupants of the car had outstanding warrants.

12.      Though the stop was routine and the car's occupants had done nothing suspicious or threatening, EPD Sergeant Luke Nelson and Officer Matthew McGraw arrived in support of Defendant Norcross.

13.      Defendant Norcross administered field sobriety tests to the driver, while Mr. Wuebker and the other passenger remained in the car.

14.      Mr. Wuebker informed the officers at the beginning of the encounter that he needed to use the bathroom, and requested permission to get out of the car to do so, at a nearby gas station.

15.     There was a gas station very near the scene of the stop that Mr. Wuebker could have easily walked to, in order to use the bathroom. His need was increasingly urgent.

16.     Mr. Wuebker began to exit the vehicle so that he could go to the bathroom.

17.     Defendants Nelson and McGraw aggressively ordered Mr. Wuebker to stay in the vehicle and told him that he was not free to leave.

18.     Sergeant Nelson, apparently annoyed by minor verbal protests by the female passenger in the front seat of the car (who called Sgt. Nelson a "fucking pig" and a "fucking asshole"), declared his own intention to retaliate and to "fuck these people up."

19.     Mr. Wuebker was unarmed and had not committed any crime and Defendants did not even have reasonable suspicion that he had committed any crime sufficient to detain him. Even so, Defendants arrested him without even reasonable suspicion, by insisting that he was not free to leave to go to the bathroom.

20.     That said, Mr. Wuebker's need to use the bathroom only increased. He attempted to slowly clamber out of the backseat of the two-door vehicle, so that he could walk to the bathroom. At this point, Defendants screamed that he was under arrest and told him to get out of the car.

21.     Mr. Wuebker was very confused by the conflicting orders being yelled at him: being emphatically ordered to stay in the car when he said he wanted to get out, and then aggressively ordered out of the car, when he had done nothing wrong and only needed to use the bathroom.

22.     Defendants McGraw and Nelson then attempted to forcibly remove Mr. Wuebker from the backseat of the 2-door coupe-style vehicle.

4

23.     Mr. Wuebker did not act aggressively or threateningly in any way toward any of the officers.

24.     None of the defendant officers could have conceivably been in reasonable fear for their safety based upon any of Mr. Wuebker's conduct or the circumstances confronting them.

25.     Nevertheless, Defendant McGraw, without warning, unjustifiably pepper sprayed Mr. Wuebker.

26.     Defendant McGraw suddenly grabbed Mr. Wuebker and violently dragged him out of the vehicle.

27.     While this was happening and still with Mr. Wuebker not threatening any officer in any way, Defendant Norcross, without warning, suddenly fired his Taser into Mr. Wuebker's chest.

28.     At this point, the Defendants had forcibly dragged Mr. Wuebker fully out of the vehicle having disabled him with pepper spray and taser shocks, and they then slammed him headfirst into the road.

29.     While Mr. Wuebker was on the ground crying out in excruciating pain and bleeding from the gaping headwound that Defendants had just inflicted on him, Defendant Norcross again (and once again without warning) deployed his Taser in drive stun mode into Mr. Wuebker.

30.     After having tazed Mr. Wuebker already twice without any warning or justification, once with the taser probes in his chest and once in drive stun mode in his back while he laid on the ground, Defendant Norcross yelled "If you move you will get tazed again, do you understand me?!"

31.     Mr. Wuebker was crying, and did not move, and continued to comply with commands of the officers.

32.     Though Mr. Wuebker posed no threat of flight or injury to the officers, and despite the fact that Mr. Wuebker was not resisting the efforts of the officers to throw him to the ground, Defendant McGraw violently delivered two painful knee strikes to Mr. Wuebker's ribs.

33.     This is a still shot taken from the Body Worn Camera of Defendant Officer Nelson after Mr. Wuebker was brutally extracted from the car in which he was sitting:



34.     Although Mr. Wuebker was not resisting arrest and presented no threat to anyone after he was slammed to the ground, all three (3) defendant officers went hands on to aggressively and forcefully detain him.  Here is a screenshot of the scene after the forceful extraction of Mr. Wuebker from the car:

6



05/20/18 02:36:06
N42.85505 W106.27166

Target

Fastest

Patrol

Evansville Police Department
Officer Bryce Norcross
51

35.     After this overwhelmingly violent and injurious force, Defendants handcuffed Mr. Wuebker without further incident, as he lay face-down on the road bleeding profusely from his head.

36.     Mr. Wuebker was taken to the Natrona County Detention Center and charged with obstructing a peace officer.

37.     In addition to pepper spraying him and tasing him twice, Defendants inflicted upon Mr. Wuebker both a concussion and a gaping head wound which required stitches to close.

38.     On February 27, 2019, the baseless charge against Mr. Wuebker was dismissed, when the prosecutor examined the facts of the case and determined that it was "in the best interest of justice" that he not be charged with any offense.

39.     Defendants' unlawful conduct caused Mr. Wuebker significant injuries, damages, and losses.

40.     Defendants' conduct as described herein was engaged in pursuant to the training, customs, policies and practices of the Evansville Police Department.

41.     The individual defendants' conduct as set forth herein was approved by Evansville, demonstrating that such conduct was authorized and within approved practices and policies of the city.

42.     Defendant Evansville, Wyoming failed to properly train, supervise, and discipline the Individual Defendants, despite the obvious need for scrutiny in specialized trainings, supervision, and discipline regarding decisions about searches, entries, and seizures, and the fact that its current custom, polices, an/or practices with respect to training, supervision, and discipline are clearly likely to result in a violation of constitutional rights.

43.     In light of the duties assigned to Evansville police officers, the need for more or different training than provided to these officers is so obvious, and the inadequacy of such training so likely to result in the violation of constitutional rights, that the policymakers of Evansville can reasonably be said to have been deliberately indifferent to the need. Accordingly, the failure to provide such proper training represents a policy for which Evansville is responsible, and for which the city may be held liable since it actually caused the injuries to Mr. Wuebker.

44.     As made clear by their blatantly unconstitutional uses of excessive force, the Individual Defendants were not properly trained on the Fourth Amendment, or how to conduct a lawful seizure, search, or arrest.

8

45.    None of the Individual Defendants were disciplined for their actions, nor was any officer informed by EPD Command Staff that his conduct fell outside of approved departmental custom or practice.

46.    The Evansville Police Department's response to these events evidences a pattern and practice of failing to discipline officers for constitutional violations. By failing to discipline the Individual Defendants for their unconstitutional and illegal conduct, Defendant Evansville approved their conduct, and effectively trained them and other members of the EPD that such conduct is consonant with official custom, policy and practice.

47.    Defendant Evansville's approval of the Individual Defendants' blatantly unconstitutional actions sends a clear and unequivocal message to its employees—it *trains* them—that the use of such significant and disproportionate force is acceptable, consistent with policy, and is approved practice, causing similar constitutional violations to be likely or even inevitable in the future.

48.    As the municipal entity, it is also Defendant Evansville's responsibility to properly train its officers to ensure they perform their duties correctly and to discipline, rather than approve their conduct, so that officers can learn from their mistakes and perform their jobs correctly moving forward. Failure to do so will lead to more unconstitutional conduct by Evansville Police officers.

### V.    STATEMENT OF CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourth Amendment Violation**
**Excessive Force**
**(Against All Defendants)**

49.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

50.     Defendants were acting under color of state law in their actions and inactions at all times relevant to this action.

51.     Mr. Wuebker had a clearly established Fourth Amendment right to be protected against excessive force at the hands of law enforcement personnel.

52.     The Individual Defendants unlawfully seized Mr. Wuebker by means of excessive physical force.

53.     The Individual Defendants had no warrant authorizing any seizure of Mr. Wuebker's person.

54.     No legally recognizable circumstances, exigent or otherwise, existed which would have justified or permitted the Individual Defendants' conduct.

55.     The Individual Defendants' actions were objectively unreasonable in light of the circumstances confronting him.

56.     Defendants' use of force on Mr. Wuebker was significantly disproportionate to the need under the circumstances set forth herein and was objectively unreasonable considering the facts and circumstances of this case, including the severity of the crime at issue, whether Mr. Wuebker posed an immediate threat to the safety of the officers or others, and whether Mr. Wuebker was actively resisting arrest or attempting to evade arrest by flight.

57.     Mr. Wuebker did not present any immediate threat to the safety of the officers or others.

58.     Mr. Wuebker did not attempt to flee or otherwise evade arrest.

59.     Mr. Wuebker did not actively resist arrest or disobey with the lawful directives of the defendants herein.

60.     The Individual Defendants recklessly and unreasonably created the situation in which they pepper sprayed, tased, and beat Mr. Wuebker.

61.     The Individual Defendants engaged in these actions intentionally, willfully, and wantonly.

62.     The Individual Defendants engaged in these actions maliciously or with reckless or callous disregard of, or indifference to, the rights and safety of Mr. Wuebker.

63.     The Individual Defendants' conduct violated clearly established rights belonging to Mr. Wuebker of which any reasonable officer in their position would have known.

64.     Defendant Evansville failed to properly train, supervise, and discipline its EPD employees regarding the proper use of physical restraint and force, resulting in Defendants' excessive use of force against Mr. Wuebker.

65.     This inadequate training, supervision, and discipline resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant Evansville.

66.     In light of the duties and responsibilities of Defendant Evansville personnel – who must make decisions regarding when uses of force are appropriate – the need for scrutiny in specialized training, supervision, and discipline regarding such decisions is so obvious, and the inadequacy of appropriate training and supervision is so likely to result in a violation of constitutional rights, such as those described herein, that Evansville is liable for its failure to properly train, supervise, and discipline its subordinate employees and agents.

11

67.    Such failure to properly train and supervise was the moving force behind and proximate cause of Defendants' unreasonable and excessive use of force against Mr. Wuebker, and constitutes an unconstitutional policy, procedure, custom, and/or practice.

68.    Mr. Wuebker has been and continues to be damaged by Defendants' use of excessive force because his mistreatment caused her excruciating pain and continues to cause her substantial mental and emotional distress.

69.    The acts or omissions of each Defendant, including the constitutional policy, procedure, custom, and/or practice described herein, were the legal and proximate cause of Mr. Wuebker's damages.

### SECOND CLAIM FOR RELIEF
**42 U.S.C. § 1983 – First Amendment Violation**
**Retaliation**
**(Against All Defendants)**

70.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

71.    The actions of Defendants as described herein, while acting under color of state law, intentionally deprived Mr. Wuebker of his First Amendment right to be free from retaliation for his protected speech.

72.    Plaintiff was engaged in First Amendment-protected expression.

73.    The actions of Defendants – specifically, the use of excessive force against a non-threatening person who was confused and scared at the officers' inconsistent commands – can be expected to chill a reasonable person from engaging in activity protected by the First Amendment.

74.    Plaintiff's expression did not violate any law.

12

75.     Defendants' jointly and of their own accord responded to Plaintiff's First Amendment protected activity with retaliation, in the form of grossly excessive force.

76.     By unlawfully using force against Plaintiff, Defendants sought to punish Plaintiff for exercising his First Amendment rights, to silence him, and to deter him from speaking in the future. Defendants' retaliatory actions would chill a person of ordinary firmness from engaging in such First Amendment protected activity.

77.     Defendants' retaliatory actions were substantially motivated by Plaintiff's exercise of his First Amendment rights.

78.     At the time when Defendants retaliated against Plaintiff for exercising his First Amendment rights, Plaintiff had a clearly established constitutional right under the First Amendment to the United States Constitution to be free from retaliation. Any reasonable law enforcement officer knew or should have known of this clearly established right.

79.     Defendants, collectively, failed to intervene to prevent each Defendant from violating Plaintiff's constitutional rights.

80.     Defendants engaged in their conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

81.     Defendants retaliated against Plaintiff for engaging in expressive activity in accordance with the customs, policies, and practices of Defendant Evansville.

82.     Defendant Evansville has a custom, practice or policy of tolerating its officers' retaliatory violations of the First Amendment of the United States Constitution.

83.     Defendant Evansville failed to properly supervise and/or train its officers.

13

84. The actions of Defendants were authorized (before and during the fact), and ratified (after the fact), by final policymakers for Defendant Evansville.

85. Defendant Evansville's customs, policies, and/or practices, and the decisions of its final policymakers, were the moving force behind Defendants' violation of Plaintiff's constitutional rights.

86. As a direct and proximate cause and consequence of Defendants' unconstitutional acts and omissions, described above, Plaintiff suffered injuries, damages, and losses.

87. Defendants' herein described acts or omissions were the moving force and the legal, direct, and proximate cause of Plaintiff's injuries and losses, including but not limited to non-economic damages, economic damages, the physical and mental pain and anguish Plaintiff suffered during and after the protest, and other compensatory and special damages.

88. Defendants' intentional actions or inactions as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award them all relief as allowed by law, including, but not limited to the following:

a. Declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

14

c.  Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d.  Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e.  Pre-judgment and post-judgment interest at the highest lawful rate;

f.  Attorney's fees and costs; and

g.  Such further relief as justice requires.

Dated this 27th day of April 2022.

KILLMER, LANE & NEWMAN, LLP

*s/ Darold W. Killmer*

_____

Darold W. Killmer
Reid Allison*
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
dkillmer@kln-law.com
rallison@kln-law.com

*Attorneys for Plaintiff*

*Motion for admission pro hac vice forthcoming.

15

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial of all issues so triable.

DATED and SIGNED this 27th day of April 2022.

KILLMER, LANE & NEWMAN, LLP

*s/ Darold W. Killmer*

Darold W. Killmer
Reid Allison
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
dkillmer@kln-law.com
rallison@kln-law.com

*Attorneys for Plaintiff*

16